UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JERRY Z.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-03022-MJD-JPH |
| | ) |
| ANDREW M. SAUL, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Jerry Z. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d).

**I. Background**

On April 1, 2014, Claimant filed an application for DIB, alleging disability beginning March 1, 2011.[2] [Dkt. 9-3 at 3.] The claim was denied initially on November 12, 2014, [Dkt. 9-

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] The parties set forth Claimant's medical background in their briefs. [*See* Dkt. 13 at 4 & Dkt. 14 at 2.] Because these facts involve Claimant's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate only specific facts as needed below.

1

4 at 4], and then again upon reconsideration on January 29, 2015. [*Id.* at 14.] Administrative Law Judge Ronald T. Jordan ("ALJ") held a hearing on Claimant's application on November 2, 2016. [Dkt. 9-2 at 30.] On January 18, 2017, the ALJ issued his determination that Claimant was not disabled. [*Id.* at 26.] The Appeals Council then denied Claimant's request for review on May 17, 2017, [*id.* at 2], which made the ALJ's decision the final decision of the Commissioner. Claimant filed a complaint in this court on July 19, 2017, to review the decision of the Commissioner. [Dkt. 9-11 at 23.] On April 13, 2018, the court vacated the ALJ's decision and remanded the case for further proceedings. [*Id.* at 38.] After the Appeals Council remanded the case to the ALJ, the ALJ held a second hearing on February 11, 2019. [Dkt. 9-10 at 22.] On March 26, 2019, the ALJ issued his determination that Claimant was not disabled. [*Id.* at 16.] Claimant timely filed a Complaint with this Court to review the new decision of the Commissioner. [Dkt. 1.]

## II. Legal Standard

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment

appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520 (2012). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2007). This Court may not reweigh the evidence or substitute its judgement for that of the ALJ, but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and there was substantial evidence supporting the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Barnett*, 381 F.3d at 668 (quoting *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003)). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006). While

the ALJ must base his decision on all of the relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and must provide some glimpse into his reasoning to "build an accurate and logical bridge from the evidence to her conclusion," he need not "address every piece of evidence or testimony." *Dixon,* 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity from his alleged onset date of March 1, 2011, through December 31, 2016, his date last insured. [Dkt. 9-10 at 8.] At step two, the ALJ determined that Claimant had the following severe impairments: arthritis, mild obesity, restless leg syndrome, sleep apnea, and high blood pressure. [*Id.*] At step three, however, the ALJ found that Claimant "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." [*Id.* at 9-10.] In making this determination, the ALJ considered Listings 1.02 (Major Disfunction of a Joint(s)), 4.02 (Chronic Heart Failure), 3.10 (Reserved), 3.02 (Chronic Respiratory Disorders), and 3.09 (Chronic Pulmonary Hypertension). [*Id.* at 10-12.]

The ALJ next analyzed Claimant's RFC, and concluded that Claimant had the RFC to perform medium work except:

> [T]he claimant can only occasionally lift, carry, push or pull up to 50 pounds, frequently lift, carry, push or pull up to 25 pounds, stand and or walk up to six hours, during an eight hour workday and sit up to six hours, during an eight hour workday. Furthermore, the claimant can only occasionally stoop, balance, crouch, crawl, kneel or climb and the claimant can only occasionally lift overhead with his left upper extremity, but can frequently reach overhead with his right upper extremity.

[*Id.* at 13.] In determining this RFC, the ALJ concluded that, "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these

4

symptoms are not entirely consistent with the medical evidence and other evidence in the record." [*Id.* at 14.]

At the February 11, 2019, hearing, the Vocational Expert ("VE") testified that Claimant's past relevant work could be classified as Greaser/Oiler. [*Id.* at 40.] At step four, the ALJ found that "claimant was able to perform his past relevant work as a greaser, as this job is normally performed in the national economy." [*Id.* at 16.] Based on this finding, the ALJ concluded that Claimant was not disabled. [*Id.*]

## IV. Discussion

The central issue is whether substantial evidence supports the ALJ's determination that Claimant is not disabled. Claimant raises two arguments for reversal of the ALJ's decision: (1) the ALJ failed to support his conclusion that Claimant retained an RFC which allowed him to use foot pedals without any limitation; and (2) the ALJ relied on a misclassification of Claimant's past relevant work in denying his application for DIB. Each argument is addressed, in turn, below.

### A. RFC Determination

Claimant contends that the ALJ erred by failing to provide substantial evidence to support his RFC determination which reflected no limitations as a result of Claimant's restless leg syndrome. Specifically, Claimant argues that the ALJ made an inaccurate conclusion about the status of his condition and unjustifiably relied on the testimony of the medical expert in forming an RFC assessment without confronting contradictory evidence. The Court agrees.

An individual's residual functional capacity is the most that they can still do despite their limitations. 20 C.F.R. § 404.1545. The ALJ will assess a claimant's residual functional capacity based on all the relevant evidence in the case record, including descriptions and observations of

5

claimant's limitations resulting from his symptoms, such as pain. *Id.* The Court "cannot uphold an administrative decision that fails to mention highly pertinent evidence." *Parker v. Astrue,* 597 F.3d 920, 921 (7th Cir. 2010). Additionally, the ALJ may not analyze only the evidence that supports his ultimate conclusion; if contrary evidence exists, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

> The ALJ concluded that Claimant had the RFC to perform medium work except:
>
> [T]he claimant can only occasionally lift, carry, push or pull up to 50 pounds, frequently lift, carry, push or pull up to 25 pounds, stand and or walk up to six hours, during an eight hour workday and sit up to six hours, during an eight hour workday. Furthermore, the claimant can only occasionally stoop, balance, crouch, crawl, kneel or climb and the claimant can only occasionally lift overhead with his left upper extremity, but can frequently reach overhead with his right upper extremity.

[Dkt. 9-10 at 13.] While Claimant's neurologist, Dr. John D. Chase, did note in his April 21, 2015, report that Claimant's new medication had "almost completely controlled his involuntary leg movements and restless leg syndrome," [Dkt. 9-8 at 39], the record evidence shows that Claimant's symptom relief from his restless leg syndrome was only temporary. Claimant visited his treating physician, Dr. Talessa Powell, for his restless leg syndrome on January 19, 2016, where Dr. Powell reported that Claimant does not sleep very well due to his restless leg syndrome and that she would "change his regimen and see if that helps." [*Id.* at 18, 21.] Claimant visited Dr. Powell again on September 19, 2016, for his restless leg syndrome, where he reported having "difficulty initiating sleep, difficulty maintaining sleep, and jerky [movements] during sleep … despite medication." [*Id.* at 6.] On May 15, 2017, Dr. Powell referred Claimant to a neurologist to evaluate and treat Claimant's restless legs syndrome because he was only receiving "partial relief from medications." [Dkt. 9-15 at 10, 13.] On August 23, 2018, Dr. Powell reported that Claimant's current medications for his restless leg

6

syndrome were "lacking efficacy." [*Id.* at 3.] When Claimant was asked during the February 11, 2019, hearing if his restless leg syndrome medications have been totally effective, Claimant testified that "[t]hey never have." [Dkt. 9-10 at 39.] Claimant's consistent doctor visits and ongoing changes to his medication for his restless leg syndrome following his 2015 visit with Dr. Chase demonstrates that his condition continued to be a physical limitation that was not successfully treated several years after the ALJ indicated that it had been.

Additionally, the ALJ relied on medical expert Dr. Lee Fischer's testimony stating that he did not "see where [Claimant's restless leg syndrome] would necessarily affect his ability to work during the day," [*id.* at 30], when assessing Claimant's RFC, but failed to address evidence that directly contradicted this testimony. On April 6, 2015, Claimant reported to Dr. Chase that he "has difficulty with leg restlessness during the day if he is inactive." [Dkt. 9-8 at 51.] Claimant also testified during the February 11, 2019, hearing, that his previous job required him to drive for about half of the day, and that his "[l]egs will kick" while driving, making him "afraid that [he] might kill somebody." [Dkt. 9-10 at 27-28.] Claimant further testified about his daytime symptoms, stating that "there was several times that I went to hit my brakes and my leg kicked and it wouldn't let me hit my brakes in that truck." [*Id.* at 44.]

The ALJ failed to articulate his reasoning in why he rejected the above evidence that directly contradicts his RFC assessment. This must be remedied on remand.

  B. <u>Past Relevant Work</u>

Claimant argues that the VE misclassified Claimant's past work as a Greaser/Oiler, and that the ALJ erred by relying on this misclassification without addressing evidence contradicting the classification. Claimant further contends that, at a minimum, he performed a job that was a composite of both Greaser/Oiler and Tank-Truck Driver, which would therefore have no

7

Dictionary of Occupational Titles ("DOT") counterpart because it contains significant elements of two occupations.

If a VE's testimony appears to conflict with the DOT, then the ALJ is required to obtain "a reasonable explanation for the apparent conflict." *See* Security Ruling 00-4p; *Overman v. Astrue,* 546 F.3d 456, 463 (7th Cir. 2008) (citing *Prochaska v. Barnhart,* 454 F.3d 731, 735 (7th Cir. 2006)). The ALJ must also "explain in the determination or decision how he or she resolved the conflict." Security Ruling 00-4p. "[B]ecause SSR 00–4p imposes an affirmative duty *on the ALJ* to inquire into and resolve apparent conflicts, a claimant's failure to raise a possible violation of SSR 00–4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Overman*, 546 F.3d at 463 (7th Cir. 2008) (emphasis in original). Additionally, "[a] claimant is not disabled if he can do his past relevant work either in the manner he performed it before the impairment *or* in the manner it is generally performed in the national economy." *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019) (citing *Getch v. Astrue*, 539 F.3d 473, 482 (7th Cir. 2008)). However, "if the prior position was a composite job, then the ALJ may not reference [the DOT] when determining whether a claimant can perform his past job as it is generally performed." *Id.* A composite job is defined as a job that "ha[s] significant elements of two or more occupations and, as such, ha[s] no counterpart in the DOT." SSR 82-61. When the position is a composite job, the situation "will be evaluated according to the particular facts of each individual case." [*Id.*]

The VE classified Claimant's past work as that of a Greaser/Oiler. [Dkt. 9-10 at 40.] Following the hearing, Claimant objected to the VE's testimony, claiming that his past relevant work was a composite between the DOT title that the VE identified and another job from the DOT—Tank-Truck Driver—which was more closely aligned with the duties of his past work.

8

[Dkt. 9-14 at 18.] Claimant testified that his job required him to drive about half of the day. [Dkt. 9-10 at 27.] The VE testified that the Greaser/Oiler job could be performed by an individual who is limited to occasional use of foot pedals bilaterally. [*Id.* at 41.] The VE further testified that with this same limitation, Claimant would be precluded from this job as he had specifically performed it because Claimant testified that the job required him to drive. [*Id.* at 41.] Since there was evidence indicating that Claimant's job may have been a composite job, an apparent discrepancy existed between the VE's testimony and the DOT, and the ALJ was therefore required to obtain a reasonable explanation for this conflict and explain in his decision how he resolved the conflict before concluding that Claimant could perform his past work. The ALJ erred in failing to address this discrepancy in his decision.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings.

SO ORDERED.

Dated:  16 JUL 2020

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

9